| | | |
|---|---|---|
| CHERYL WALWORTH, | ) | |
|       **Plaintiff** | ) | **C.A. No. 08-102 Erie** |
| | ) | |
|     **v.** | ) | |
| | ) | **District Judge McLaughlin** |
| MICHAEL ASTRUE, | ) | **Chief Magistrate Judge Baxter** |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
|       **Defendant** | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.     RECOMMENDATION**

It is respectfully recommended that Plaintiff's Motion for Summary Judgment be denied, that Defendant's Motion for Summary Judgment be granted, and that the Commissioner's decision denying Plaintiff's application for Social Security Disability Insurance Benefits be affirmed.

**II.    REPORT**

    **A.    Procedural Background**

Plaintiff Cheryl Walworth ("Walworth") brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), as amended, 42 U.S.C. § 405(g), seeking judicial review of the Commissioner of Social Security's final decision denying her application for Disability Insurance Benefits ("DIB") under title II of the Social Security Act. Walworth filed the DIB application July 3, 2003, alleging disability as of June 20, 2003 (Tr. 48-52).[1] Her application was denied, and she filed a request for a hearing. (Tr. 28-29, 31-34). A hearing was conducted before Administrative Law Judge James J. Pileggi ("ALJ") on July 12, 2005. (Tr. 817-54). The ALJ

---

[1]

The Court's recitation of relevant facts is derived from the transcript of the administrative record filed by the Commissioner as part of his answer in accordance with § 205(g)of the Act, 42 U.S.C. § 405(g), which is referred to hereinafter as "Tr."

issued a decision on January 25, 2006, denying Walworth's DIB claim. (Tr.13-21). On February 15, 2008, the Social Security Administration's Appeals Council denied Walworth's request for review of the ALJ's decision. (Tr. 5). Walworth alleges that the ALJ's decision was not supported by substantial evidence. The Commissioner disagrees. Both Walworth and the Commissioner have filed motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The matter is now ripe for review and disposition.

### B.     Factual Background

Walworth was born September 27, 1952. (Tr. 49). At the time of the ALJ hearing, she was 53 years of age. She is sixty-one inches tall and her weight fluctuates around 235 pounds. (Tr. 805). She and her husband own a school-bus business where she worked as a secretary until the onset of her disability on June 20, 2003. (Tr. 60). She also has twenty years experience working as a tax collector. (Id.) Walworth alleges that she cannot work because she has Wegener's Granulomatosis Disease ("Wegener's").[2] (Tr. 80). In her DIB application, Walworth reported that she becomes short of breath upon exertion, fatigues easily, and has joint stiffness and swelling. (Tr. 80). She can carry out her daily routine on a normal basis, but re-works her routine when she feels tired. (Tr. 86). She can do only minimal yard work and only light household chores; however, she can carry two bags of groceries at a time, use a riding lawn mower, climb a flight of stairs, and sit for up to one hour at a time. (Tr. 80-82). She enjoys painting, shopping and going to the movies. (Tr. 84-89).

---

[2]

Wegener's is an uncommon disease that usually begins as a localized granulomatous inflammation of the upper or lower respiratory tract. Granulomatosis is the development of multiple granulomas, which are little granule-like tumors or growths. Early diagnosis and treatment are crucial because a high remission rate is possible through immunosuppressive medication. Long-term complete remission can be achieved through therapy, even with advanced disease. Complaints and symptoms often refer to the upper-respiratory tract including sinus and breathing problems. The Merck Manual of Diagnosis and Therapy 442-443 (Mark Beers, M.D. and Robert Berkow, M.D. ed., Merck & Co., Inc. 17th ed. 1999).

## C.     Medical Background

Prior to 2000, Walworth developed problems with shortness of breath upon exertion.  She was hospitalized and underwent a lung biopsy.  The biopsies came back positive and she was diagnosed with Wegener's in November 2001, more than two years before the onset of her alleged disability. (Tr. 374).  Walworth was referred to a rheumatologist, Elaine Greifenstein M.D  ("Dr. Greifenstein"), and a pulmonologist, James Marcin D.O. ("Dr. Marcin"). (Tr. 62). Dr. Greifenstein immediately began immunosuppressive therapy by placing Walworth on high doses of Prednisone and Cytoxan. (Tr. 633).  Prior to the onset of the disability in June 2003, Walworth experienced exacerbation and remissions of her symptoms.  Dr. Greifenstein stated that she would need immunosupression therapy long term.  To control her symptoms and decrease potential side effects, Dr. Greifenstein gradually decreased her medications and replaced her Cytoxan with methotrexate. (Tr. 555).

In June 2002, Walworth complained of several symptoms; however, it was because she was not taking her medications correctly.  Her symptoms ceased once she returned to the proper dosage. (Tr. 582).  On March 24, 2003, Walworth developed another exacerbation of her Wegener's. Dr. Marcin found a decrease in her lung function. (Tr. 556, 701).  Dr. Greifenstein increased her medications and she improved rapidly.  (Tr. 560-66).  Less then two weeks later, on May 7, 2003, Dr. Greifenstein noted a marked and dramatic improvement with the increase in medications.  Walworth admitted shortness of breath only upon exertion and only mild difficulty with climbing stairs, reaching, or chores. (Tr. 558).  On May 12, Dr. Marcin stated that Walworth was clinically improved with the intensification of treatment. (Tr. 556-57).

On June 24, 2003, just several days after the onset of her disability, Dr. Greifenstein reported that Walworth's condition was stable. (Tr. 554). Walworth denied chest pain or shortness of breath.  There were decreased breath sounds at the bases of her lungs, but her lungs were clear and her respirations were regular. (Id.).  Her shoulders were without pain, her hips were non-tender, and both her hips and shoulders had full range of motion.  (Tr. 555).  Her

3

hands, wrists, knees, ankles, and feet were non-tender and without synovitis.[3] (Id.).  During a

follow-up appointment on September 16, 2003, Dr. Marcin concluded that Walworth's

pulmonary status was improved.  (Tr.. 701).  Walworth denied shortness of breath, wheezing,

sputum production, hemopytsis or edema,[4] and her breath sounds were clear. (Tr. 705).

On September, 22, 2003, John K. Schibli D.O. ("Dr. Schibli") performed a consultative

examination and compiled a Medical Source Statement of Walworth's ability to perform

work-related physical activities.  (Tr. 717)  At the appointment, Walworth stated that she was

feeling "fairly well". (Id.).  Dr. Schibili reported that the strength in her arm and leg muscles was

+5/5 and that she showed no difficulty balancing on one foot independently.  (Tr. 721).  He

concluded that Walworth could occasionally[5] lift and carry ten pounds, stand and walk up to two

hours a day, and bend, kneel, stoop, balance and climb. (Tr. 723).  Dr. Schibili opined further that

Walworth had no limitation reaching, handling or sitting, but should avoid poor ventilation,

heights, temperature extremes, fumes, odors, and gases. (Tr. 724).

On October 17, 2003, a state agency consultant examined the record and affirmed

Schibili's report.  He stated that Walworth remained fairly functional during daily living activities

and indicated no problem using her hands for fine manipulation.  (Tr. 729).  He also noted that

Walworth attempted no changes within her home to accommodate her condition, used no

assistive devices for walking, and used only Tylenol for her joint pain. (Tr. 734).  He concluded

that "the claimant's allegation of limitations in walking, standing, lifting and climbing to the

---

[3]

Synovitis is defined as inflammation of a synovial membrane (a membrane that secrets synovia which is a transparent liquid contained in joint cavities).  It is usually very painful and is characterized by a fluctuating swelling.  Dorland's Illustrated Medical Distionary 1530 John P. Friel ed., W.B. Saunders Company 25th ed. 1974).

[4]

Hemoptysis is defined as the expectoration of blood or blood-stained sputum. Dorland's at 699.
Sputum is defined as matter ejected from the lungs. Dorlands at 1461
Edema is defined as the presence of abnormally large amounts of fluid in the intercellular tissue spaces of the body. Dorland's at 494.

[5]

Occasionally means occurring from very little up to one-third of an 8-hour day.  (Tr. 721).

degree that it prevents all work related activity is not fully credible." (Id.).

On March 26, 2004, Walworth reported feeling "pretty good," and months later, on August 6, 2004, she again reported feeling "pretty good right now". (Tr. 774, 762). During both examinations her hands, wrists knees, ankles and feet were non-tender and without synovitis. Walworth reported shortness of breath only upon exertion and denied hemopytsis. She admitted that she continued to decrease her medications without any flares. (Tr. 775). On November 11, 2004 Walworth complained of chest pain caused by

scraping wallpaper, but admitted her breathing was stable. (Tr. 757). Soon after, Dr. Greifenstein received a letter from Walworth requesting a disability form, and Dr. Greifenstein returned it to her with a statement that Walworth was unable to work from November 2000 to permanent. No further details or explanation were given. (Tr. 747).

On February 11, 2005, during a follow-up visit, Dr. Greifenstein reported that Walworth's condition was stable on methotrexate and low doses of prednisone. (Tr. 752). Walworth denied having shortness of breath, and she was able to do most of the activities of daily living with only mild difficulties with climbing stairs, reaching, walking, and chores. (Id.). On examination, there were decreased breath sounds at the bases of her lungs, but her lungs were clear and her respirations regular. Her shoulders were without pain, her hips were non-tender, and both her hips and shoulders had full range of motion. Her hands, wrists, knees, ankles and feet were non-tender and without synovitis, and her muscle strength was +5/5. (Id.).

### D.     Disability Hearing

The administrative hearing was held on July, 12, 2005. (Tr. 827-854). Walworth testified that her problems were not mental but were physical in nature. She testified that her condition was "pretty much the same" as it was on June 20, 2003, and that the medications helped her significantly. (Tr. 834). Her shortness of breath was not constant, but rather came and went only upon exertion. (Tr. 829). She stated that, although her physical conditions had improved, she could not return to work because she got confused easily and could not handle stress well. (Tr. 834). She then testified that she became weak and tired easily, and that she

5

could not work an 8-hour day because pain in her joints would cause her to take frequent breaks. (Tr. 836). She testified further that she could only stand for five to ten minutes at a time, and could not sit in one place for more than ten minutes at a time. (Tr. 827, 831, 851). However, she admitted that she took only Tylenol for the joint pain and that this helped. (Tr. 828). Walworth also indicated that she frequently used the bathroom in the morning after she took her medications. (Tr. 832-33).

A vocational expert ("VE"), Leon Reid, Ph. D, testified at the hearing. He verified that Walworth's tax collector and secretarial positions qualified as sedentary[6] work. (Tr. 840). The ALJ asked the VE whether a hypothetical individual could perform secretarial work if she was limited to light work[7] that allowed close proximity to restroom facilities, in a position not requiring postural positions, and in an environment without pulmonary irritants. (Tr. 844). The VE responded affirmatively. (Id.). Then in response to additional hypotheticals, the VE testified that if the individual is unable to engage in frequent, fine manipulation with her hands, or if she needed to be off-task 10-15% of the workday and could not report to work three or more times a month, she would be precluded from finding a job in the national economy. Tr. 852.

### E.    The Administrative Law Judge's Decision

The ALJ made the following findings which are listed verbatim from his decision:

1.     The claimant meets the non-disability requirements for a period of disability insurance benefits set forth in section 216(i) of the Social Security Act through December 31, 2008.

2.     The claimant has not engaged in substantial gainful activity since June 20, 2003, the alleged onset date (20 CFR § 404.1520(b)).

---

[6]

Sedentary work involves occasionally lifting no more than 10 pounds at a time and occasionally walking and standing. 20 CFR § 404.1567(a)

[7]

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors. 20 CFR § 404.1567(b)

3. The claimant has the following severe impairment: Wegener's granulomatosis (20 CFR § 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1, Regulations No. 4 (20 CFR § 404.1520(d)).

5. Upon careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work allowing for close proximity to restroom facilities; no pulmonary irritants (dust, smoke, fumes, etc.); with no crawling, kneeling, climbing or balancing.

6. The claimant is able to perform past relevant work (20 CFR § 404.1565).

7. The claimant has not been under a "disability," as defined in the Social Security Act, from June 20, 2003, through the date of this decision (20 CFR § 404.1520(g)).

The ALJ then determined that Walworth was not entitled to disability insurance benefit


## III. STANDARDS OF REVIEW

### A. Jurisdiction

District Court review of an ALJ's decision regarding disability benefits is limited in scope. 42 U.S.C. §§ 405(g) provides "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party ... may obtain review of such decision by a civil action." A Commissioner's decision becomes final when the Appeals Council affirms or denies its review, or when a claimant fails to pursue available administrative remedies. Aversa v. Secretary of Health & Human Services, 672 F.Supp. 775, 777 (D.N.J.1987); see also 20 C.F.R. §§ 404.905. This court has jurisdiction to review the present case under §§ 405(g) because the Commissioner's decision became final when the Appeals Council denied review of the ALJ's decision.


### B. Standards Applicable to the ALJ's Decision

The role of this Court is to determine whether the Commissioner's decision is supported by substantial evidence. See 42 U.S.C. § 405(g) ("The findings of the [Commissioner] as to any

fact, if supported by substantial evidence, shall be conclusive ...."); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). The standard is highly deferential. Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 564-65 (1988) (quoting Consolidated Edison v. NLRB, 305 U.S. 197, 229 (1938)). See also; Johnson v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008).

To establish a disability, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2009); 20 C.F.R. § 404.1505(a) (2009). A claimant is unable to engage in substantial gainful activity when "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A).

The Commissioner performs a five-step sequential evaluation process to determine whether the claimant is under a disability. The Commissioner considers: (1) whether the claimant is currently engaged in substantial gainful activity and if so, they are not disabled; (2) if not, whether the claimant has a severe impairment that significantly limits their physical or mental ability to perform basic work activities and if not, they are not disabled; (3) if so, whether the claimant's impairment(s) meets or equals the criteria of an impairment listed in 20 C.F.R pt. 404, subpt. P, app. 1, which result in a presumption of disability; (4) if not, whether, despite the severe impairment, the claimant has the residual functional capacity ("RFC")[8] to perform past work and if so, they are not disabled; and (5) if they cannot, whether the claimant can perform any other work which exists in the national economy. 20 C.F.R. § 404.1520; Allen v. Barnhart, 417 F.3d 396, 401 (3d Cir. 2005); Sykes v. Apfel, 228 F.3d 259, 262-63 (3d Cir. 2000).

---

[8]

A claimant's residual functional capacity (RFC) reflects what the claimant can still do despite her limitations. 20 CFR 404.1545 (a)(1).

In this case, the ALJ determined at step four that Walworth could perform past relevant work as a secretary or tax collector. (Tr. 21)  The ALJ concluded that:  (1) Walworth was not engaged in substantial gainful activity; (2) that her Wegener's granulomatosis was a severe impairment; (3) that she did not have impairment(s) which met the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, and (4) that based on her RFC, she can perform past relevant work as a secretary or tax collector.  (Tr. 18-21).  Walworth contends that the ALJ's decision is unsupported by substantial evidence.  She claims that the ALJ erred:  (a) in concluding that Walworth maintains the RFC to perform past work; and (b) by disregarding part of the VE's expert testimony in response to the hypothetical questions.  (Plaintiff's Brief at pp.18-21).

## IV.    DISCUSSION

### A.    Residual Functional Capacity

Walworth contends that the ALJ erred in concluding that she maintains the RFC to perform past work.  Walworth implies that the ALJ incorrectly disregarded her testimony indicating that she could not engage in frequent, fine manipulation with her hands, could not work a full eight-hour day, and would need to frequently call off from work because of her Wegener's flare-ups.  The ALJ determined that Walworth's "[m]edically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. 19).   He concluded that Walworth maintained the RFC to perform sedentary work allowing for close proximity to restroom facilities; no pulmonary irritants (dust, smoke, fumes, etc.); with no crawling, kneeling, climbing or balancing. (Id.).  The validity of this finding depends upon whether the ALJ was justified in rejecting Walworth's testimony regarding her symptoms.

In making the RFC determination, the ALJ must consider all relevant evidence[9]  in the

---

9

Symptoms such as pain are subjective and difficult to quantify; therefore, they are considered to the extent to which they can reasonably be accepted as consistent with all the evidence.  20 C.F.R. § 404.1529.  Therefore, in

record. 20 C.F.R. § 404.1545 (a)(1); Salles v. Commissioner of Social Security, 229 Fed.Appx. 140, 147 (3d Cir. 2007). The record before the ALJ is the touchstone for determining which limitations should be included in RFC assessment. Tr.148; see also Burns v. Barnhart, 312 F.3d 113, 131 (3d Cir. 2002). The ALJ need only include in the RFC those limitations which he finds to be credible. Salles, 229 Fed.Appx. at 147. But the ALJ must indicate which evidence he rejects and which he relies upon as the basis for his findings. Schaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 433 (3d Cir. 1999).

The ALJ was not required to accept her claimed severity of symptoms because her alleged limitations were inconsistent with the other substantial evidence in the record. Allegations of pain and other subjective symptoms must be supported by objective medical evidence. 20 C.F.R. § 404.1529; Hartrantf v. Apfel, 181 F.3d 358, 362 (3d Cir. 199). A lack of evidentiary support in the medical record is a legitimate reason for excluding claimed limitations from the RFC. Salles, 229 Fed.Appx. at 148; § 404.1529(a). The ALJ concluded that Walworth's claimed frequency of Wegener's flare-ups was not consistent with the record. The ALJ noted that Walworth's history of flare-ups occurred prior to the onset of her disability. The record supports that, after the onset of her disability in June 2003, her symptoms were controlled and stable. Her visitations to her doctors were only for routine check-ups. Dr. Greifenstein consistently reported that Walworth's condition was stable. (Tr. 554). Walworth repeatedly denied any chest pain, cough or shortness of breath. There were often decreased breath sounds at the bases of her lungs, but her lungs were clear and her respirations were regular. (Tr. 554, 752). Dr. Marcin also concluded that Walworth's pulmonary status was improving and that she had only "mild" obstructive disease. (Tr. 701-05).

Moreover, the ALJ concluded that Walworth's claimed severity of pain and weakness was not consistent with the record. Dr. Greifenstein consistently reported that Walworth was able to do most of the activities of daily living with only "mild" difficulty with climbing stairs,

---

determining the severity of symptoms, the ALJ considers the claimant's statements regarding her symptoms, her daily activities, her efforts to alleviate the symptoms, records from treating and non-treating sources, her medical history, and other evidence concerning how her impairments and related symptoms affect her ability to work.

reaching, and chores. (Tr. 774, 752). Her shoulders were without pain, her hips were non-tender and both her hips and shoulders had full range of motion. (Tr. 555). Her hands, wrists, knees, ankles and feet were non-tender and without synovitis, and her muscle stregth was +5/5. (Tr. 555, 752). Dr. Schibli and the state medical expert also reported that Walworth remained fairly functional during daily activities and indicated no problem using her hands for fine manipulation. (Tr. 729). In addition, Walworth attempted no changes within her home to accommodate her condition, used no assistive devices for walking, and used only Tylenol for joint pain. (Tr. 734). Dr. Schibli and the state expert both concluded that Walworth could occasionally lift and carry ten pounds, stand and walk up to two hours a day, and bend, kneel, stoop balance and climb. (Tr. 723). She was also found to have no limitation reaching, handling or sitting. (Id.). Contrary to Walworth's allegations, the medical reports analyzing her RFC were based on an eight-hour work day and, therefore, reflected her ability to engage in consistent and sustained work throughout the day. (Tr. 721). Thus, the ALJ was justified in discounting Walworth's allegation that she was disabled from performing all work related activity due to her alleged limitations in walking, standing, lifting and climbing.

The only evidence contrary to the record is the disability form Dr. Greifenstein filled out for Walworth stating that Walworth was unable to work. However, a statement by a medical source that "'you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.'" Johnson, 529 F.3d at 203 (quoting 20 C.F.R. § 404.1527(e)(1)). Conclusions of this kind are "'reserved to the Commissioner ... because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability.'" Id. (quoting 20 C.F.R. § 404.1527(e)). Moreover, the ALJ may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)(citing Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir. 1985). Lastly, the treating source's opinion is entitled to controlling weight only when it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001); 20 C.F.R § 404.1527(d)(2). The ALJ was correct in giving this

statement little weight because it was a mere conclusory statement not supported by further explanation or medical evidence.

Furthermore, "[i]nconsistencies in a claimant's testimony or daily activities permit an ALJ to conclude that some or all of the claimant's testimony about her limitations or symptoms is less than fully credible." Salles, 229 Fed. Appx. at 146, citing Burns, 312 F.3d at 129-30. Here, Walworth's testimony about her limitations was contradicted by her daily activities, statements she made in her DIB application, and further testimony. Walworth worked until June 20, 2003 but claimed that she could not work at the same pace as she did then; yet, she also testified that her condition was "pretty much the same" as it was on June 20, 2003, that it had not worsened, and that the medications were helping her significantly. (Tr. 834). She also stated that she could not lift or carry anything and tired easily, but stated earlier that she could carry two bags of groceries at a time, could use a riding lawn mower, and could climb a flight of steps. (Tr. 80-82). Elsewhere, she testified that she could not sit for more than ten minutes at a time, yet stated earlier that she could sit for up to one hour at a time and enjoyed going to the movies. (Tr. 84-89). Finally, Walworth claimed disabling joint pain, but then admitted that she used no support devices and used only Tylenol for the pain. In light of these inconsistencies and contradictions, the ALJ had legitimate reasons for discounting her credibility.

Based on the foregoing, substantial evidence supported the ALJ's rejection of parts of Walworth's testimony as not being fully credible. Moreover, the ALJ's findings were specific enough to permit this Court to ascertain which evidence he accepted, rejected, and why. The ALJ was also careful to include all of the legitimate limitations supported by the record in the RFC determination.[10] To the extent the ALJ found several of Walworth's alleged limitations less than fully credible, the ALJ properly excluded them from her RFC.

---

[10]

For example, that she should avoid poor ventilation, heights, temperature extremes and fumes, odors, and gases. (Tr. 724).

**B.      Disregarding a Portion of the VE's Expert Response.**

Walworth contends that the ALJ should not have disregarded the VE's expert response to the second hypothetical.  The first hypothetical asked whether a hypothetical individual could work as a secretary if she was limited to light work that allowed close proximity to restroom facilities, in a position not requiring postural positions such as crawling, kneeling, climbing or balancing, and in an environment without pulmonary irritants.  (Tr. 844).  The VE responded affirmatively.  (Id.).  The ALJ then posed further hypotheticals that incorporated several limitations to which Walworth testified,   including an inability to engage in frequent, fine manipulation with her hands, an inability to work a full eight-hour day, and the need to frequently call off work.  The VE testified that such an individual could not find a job in the national economy. (Tr. 852).

Walworth claims that the ALJ erred in rejecting the additional hypotheticals which correctly incorporated her alleged limitations.  This argument fails because it depends upon the ALJ's assessment of her credibility and RFC.  While the ALJ may proffer a variety of assumptions to the VE, we do not "require an ALJ to submit to the vocational expert every impairment *alleged* by a claimant."  Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir.2005) (emphasis added).  Rather, the hypotheticals posed must "accurately portray the claimant's individual physical and mental impairments." Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984).  This means the ALJ must include only the claimant's credibly established limitations - only those impairments that are medically established. Plummer, 186 F.3d at 431; Rutherford, 399 F.3d at 554.  Even limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible - the ALJ can choose to credit portions of the existing evidence.  Rutherford, 399 F.3d at 554; see also Johnson, 529 F.3d at 205-06.

The ALJ properly rejected the additional hypotheticals because they did not accurately portray Walworth's medically established limitations.  The ALJ determined that "[a]lthough additional hypotheticals were posed ... which contained further limitations on the claimant's ability to work...these limitations were not consistent with the evidence of record, and did not accurately reflect the claimant's residual functional capacity."  This court already established that

the ALJ made proper credibility findings discounting her alleged inability to engage in fine manipulation with her hands, the inability to work a full eight-hour day, and the need to frequently call off from work. We determin ed that the ALJ's ultimate RFC determination excluding these alleged limitations was supported by substantial evidence. Thus, the ALJ properly rejected the additional hypotheticals incorporating these alleged limitations because they did not accurately represent her RFC. He correctly relied upon the first hypothetical which incorporated Walworth's credibly established limitations consistent with his RFC assessment.

## V.    CONCLUSION

For the foregoing reasons, this Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, it is respectfully recommended that Plaintiff's Motion for Summary Judgment be denied, that Defendant's Motion for Summary Judgment be granted, and that the Commissioner's decision denying Plaintiff's application for Social Security Disability Insurance Benefits be affirmed..

In accordance with the Magistrate Judges Act, 28 U.S.C. Section 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights. See e.g., Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).


S/Susan Paradise Baxter
SUSAN PARADISE BAXTER
Chief U.S. Magistrate Judge

Dated: June 11, 2009

cc:    The Honorable Sean J. McLaughlin
       United States District Judge

14